**E-Filed 5/21/10**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ANGEL ACOSTA,

Plaintiff,

v.

WELLS FARGO BANK, N.A., a national association, FIRST AMERICAN LOANSTAR, a limited liability corporation, FINANCIAL GROUP, a California company, entity type unknown, and DOES 1 to 100 inclusive,

Defendants.

Case Number C 10-991 JF (PVT)

**ORDER[1] GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

[re doc nos. 3, 21, and 25]

Plaintiff seeks a preliminary injunction to restrain Defendants from taking actions that would be adverse to Plaintiff's interest in certain real property. Moving Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and First American Loanstar ("First American") oppose and move pursuant Fed. R. Civ. P. 12(b)(6) to dismiss the complaint. The Court has considered the moving papers, declarations and exhibits, and the oral arguments of counsel presented at the

[1] This disposition is not designated for publication in the official reports.

hearing on March 26, 2010. For the reasons discussed below, Plaintiff's request for a preliminary injunction will be denied. The motions to dismiss will be granted. Plaintiff's motion for a preliminary injunction will be denied.

## I. BACKGROUND

On March 8, 2010, Plaintiff Angel Acosta ("Plaintiff") filed the instant action against Wells Fargo, First American, and Financial Group (collectively, "Defendants"). The dispute arises out of a mortgage transaction in which Defendants allegedly violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., and several provisions of California law, including California Civil Code §§ 2923.5 and 2924.

In September 2006, Plaintiff purchased real property located at 754 North 17th Street, San Jose, California 95112, a multi-family residence in which Plaintiff currently resides ("the Subject Property"). Complaint ¶¶ 11-12. To purchase the Subject Property, Plaintiff entered into a loan transaction with Wells Fargo Bank in the amount of $775,000.[2] His loan has an interest-only period of sixty months at 6.875%, following which the interest rate is to become adjustable based on the LIBOR index plus 2.250%, capped at 11.875%. Complaint ¶ 15. The loan was arranged through Financial Group, which acted as the mortgage broker and selling agent for Wells Fargo. Complaint ¶ 13. Plaintiff alleges that upon execution of the loan he was not provided with two copies of the Notice of the Right to Cancel and that he was not informed of payments from Wells Fargo to Financial Group in connection with the loan. Complaint ¶ 16. Plaintiff also alleges that his first and primary language is Spanish, Complaint ¶ 14, and that the loan documents were provided in English only. Complaint ¶ 83.

In September 2008, Plaintiff began experiencing financial difficulties and requested a loan modification from Wells Fargo. Complaint ¶ 19. He was told that he was not eligible for a loan modification until his account was between sixty and ninety days delinquent; he therefore

[2] The deed of trust, recorded on September 7, 2006, indicates that Plaintiff borrowed $620,000. Wells Fargo's RJN in Support of the Motion to Dismiss, Ex. A.

decided to stop making payments on his loan. *Id.* Plaintiff alleges that he subsequently was unable to discuss a loan modification with Wells Fargo despite making several attempts each week since October 2008 to contact Wells Fargo or an agent acting on its behalf. Complaint ¶ 24.

On February 12, 2009, Defendants recorded a notice of default against the property. Complaint ¶ 25. While he acknowledges receiving collection calls, Plaintiff alleges that he did not receive any mail, telephone calls, or other correspondence from Wells Fargo or First American before the notice of default was recorded. Complaint ¶¶ 20-21. On March 8, 2009, Plaintiff sent the Defendants a notice of cancellation, seeking to rescind the loan. Complaint ¶ 17. Plaintiff alleges that he sent Wells Fargo a Qualified Written Request, as defined by RESPA, on November 30, 2009, and that Wells Fargo did not respond within twenty days as required by RESPA. *Id.*

A foreclosure sale was scheduled for March 10, 2010. Complaint ¶ 26. On March 9, 2010, Plaintiff moved for a temporary restraining order ("TRO") and an order to show cause why Defendants should not be enjoined from selling, transferring, conveying, or foreclosing on the Subject Property. On March 10, 2010, Judge Hamilton, the district judge initially assigned to the instant case, issued a TRO effective through March 21, 2010 and ordered that the case be transferred to the San Jose Division. On the same date, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy. Wells Fargo's RJN in Opp'n to Preliminary Injunction, Ex. F. The case was reassigned from Judge Hamilton to Magistrate Judge Trumbull. On March 19, 2010, Judge Trumbull issued an order directing that the case be reassigned to a district judge. On the same day, this Court extended the TRO through March 26, 2010 so that the Court could consider in an orderly fashion the merits of Plaintiff's application for a preliminary injunction. A hearing was held on March 26, 2010. The hearing was continued to May 14, 2010 because Defendants had not yet appeared in the instant case. Wells Fargo and First American (collectively, "Moving Defendants") now move to dismiss.

//

//

## II. LEGAL STANDARDS

### A. Motion to dismiss

A complaint may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr*., 66 F. 3d 245, 248 (9th Cir. 1995).

In assessing whether to grant Plaintiff an opportunity to amend, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### B. Injunctive relief

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374)). The issuance of a preliminary injunction is committed to the discretion of the District Court. *Indep. Living Ctr.*, 572 F.3d at 651.

Plaintiff argues that a preliminary injunction also is appropriate when a party can show that "serious questions going to the merits [are] raised and the balance of hardships tips sharply in [its] favor." Before the Supreme Court's decision in *Winter*, the Ninth Circuit had held that:

> "[a] preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor. [citation] These two options represent extremes on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor."

*Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). In *Winter*, the Supreme Court expressly disapproved the "possibility standard" because it was "too lenient". *Winter*, 129 S. Ct. at 375. Following *Winter*, the Ninth Circuit found that "[t]he [Supreme] Court succinctly stated the rule to be as follows: 'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.' [*Winter*,] 129 S. Ct. at 374. To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)

Plaintiff relies on *Save Strawberry Canyon v. Dept. of Energy*, No. C 08-03494 WHA, 2009 WL 1098888, *3 (N.D.Cal. April 22, 2009), in which the court addressed further the post-

*Winter* standard for a preliminary injunction in the Ninth Circuit. The court recognized *American Trucking*, but it concluded that it could not ignore the implications of an unpublished Ninth Circuit decision subsequent to *American Trucking*. *See Greater Yellowstone Coalition v. Timchak*, 323 Fed. Appx. 512, 514 (9th Cir. 2009) (remanding a case with "serious questions" on the merits so that the district court could properly consider irreparable harm). However, following the *Strawberry Canyon* decision, the Ninth Circuit reiterated that "'[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.' [citation] . . . The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Stormans*, 586 F.3d at 1127 (internal citations omitted). *Winter* requires a showing of the likelihood of success on the merits, while the second prong of the *McNair* standard would require a showing only of a "serious question going to the merits", which is something less than a showing of likelihood.

## III. DISCUSSION

### A. Documents considered

Moving Defendants request judicial notice of the deed of trust and Plaintiff's voluntary bankruptcy petition. A court "may take judicial notice of matters of public record outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, the Court may take judicial notice of the deed of trust, Plaintiff's voluntary bankruptcy petition, and other matters of public record as discussed below.

### B. Merits of the claims

Plaintiff asserts that Defendants are liable for (1) TILA violations, (2) RESPA violations, (3) breach of the implied covenant of good faith and fair dealing, (4) fraudulent misrepresentation and concealment, (5) violating Cal. Finance Code §§ 4970-79, (6) violating Cal. Civ. Code §§ 1920-21, (7) violating Cal. Civ. Code § 1916.7, (8) violating Cal. Civ. Code § 1632, (9) negligence per se, (10) breach of fiduciary duties, (11) violating California's unfair competition law (the "UCL"), Cal. Bus. and Prof. Code § 17200, *et seq.*, and (12) civil

conspiracy. Plaintiff also seeks a judicial declaration of the rights and duties of the parties under the loan agreement.

**1. TILA violations (Claim 2)**

Plaintiff alleges that all Defendants, except First American, violated TILA by failing to provide him with two copies of the notice of his right to rescind; to reveal the true terms of the loan; to disclose kickbacks to Financial Group; and to acknowledge his purported rescission of the loan. However, the right to rescind does not apply to a residential mortgage transaction, 12 C.F.R. § 226.23(f), which is defined as "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition . . . of such a dwelling". 15 U.S.C. § 1602(w). The deed of trust provides specifically that the instant loan is a purchase money mortgage. Wells Fargo's RJN in Support of Motion to Dismiss, Ex. A at 3. Thus, Plaintiff's loan is not subject to rescission and Defendants were not required to serve two copies of the notice of the right to rescind. *See* 12 C.F.R. § 226.23(b)(1) (requiring a creditor to deliver two copies of the notice of right to rescind "in transactions subject to rescission"). Plaintiff's allegation with respect to kickbacks is entirely conclusory and need not be accepted even at the pleading stage. *See Sprewell,* 266 F.3d at 988.

In light of his complaint as a whole and documents of which the Court may take judicial notice, Plaintiff's allegation that Defendants did not disclose the true terms of the loan is implausible. Plaintiff alleges that the actual loan amount was $775,000, even though the deed of trust indicates that the loan amount is $620,000. Complaint ¶ 15 and Wells Fargo's RJN in Support of Motion to Dismiss, Ex. A at 2. Allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (internal marks and

quotation omitted). Plaintiff's allegation is entirely conclusory: he alleges that he discovered Defendants' failure to disclosure the true terms of the loan, but does not indicate what terms were not disclosed and the role each defendant played in the allegedly fraudulent scheme.

**2. RESPA violations (Claim 3)**

Under RESPA, loan servicers "ha[ve] a duty to respond to a borrower's inquiry or 'qualified written request.' 12 U.S.C. § 2605(e)." *Keen v. Amer. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086 (E.D. Cal. 2009). Plaintiff alleges that he sent a qualified written request ("QWR") to Wells Fargo. Complaint ¶ 17. However, the allegation too is entirely conclusory. To qualify as a QWR, correspondence must meet particular requirements. *See* 12 U.S.C. § 2605(e). Plaintiff does not allege that his correspondence satisfied any of the elements of a QWR. Plaintiff's allegation that Defendants provided kickbacks to Financial Group in violation of RESPA also is devoid of facts.

**3. Breach of the implied covenant of good faith an fair dealing (Claim 4)**

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal.App.2d 405, 417 (Cal. Ct. App. 1960). A "breach of a specific provision of the contract is not a necessary prerequisite" to establishing a breach of the implied covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373(1992). However, "[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Berger v. Home Depot U.S.A.*, *Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007).

Plaintiff alleges that "in failing and refusing to comply with the foreclosure avoidance provisions of Civil Code § 2923.5, Defendants breached the subject loan agreements". Complaint ¶ 49. The California Courts of Appeal addressed a similar argument in *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (Cal. App. 1st Dist. 1990). In that case, appellants argued that "the implied covenant can exist based on certain statutory duties imposed on [the appellee]. They offer[ed] no authority for such a proposition and [the court] [has] found

none. To the contrary, the covenant of good faith and fair dealing is, by definition, an implied contract term. It has no relation to any statutory duties which may exist." *Id.* Plaintiff also alleges that Defendants improperly reported the notice of default and the foreclosure to the credit reporting agencies. This claim, however, rises and falls with Plaintiff's claim that Defendants wrongfully recorded the notice of default, which will be discussed below.

**4. Fraudulent misrepresentation and concealment (Claims 5 and 6)**

Plaintiff alleges that Defendants misrepresented that he earned sufficient income to repay the loan, falsified his income to obtain the loan, and concealed his right to rescind the loan. Although these claims arise under state law, Plaintiff's allegations are subject to the Federal Rules of Civil Procedure. Allegations sounding in fraud are subject to Rule 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04; *Swartz*, 476 F.3d at 765. While he alleges that Financial Group fraudulently reported his income on the loan application paperwork, Complaint ¶ 13, Plaintiff makes only general allegations against the other "Defendants". Moreover, Plaintiff does not allege that he was unaware of Financial Group's purported misstatement of his financial situation.

**5. Cal. Finance Code §§ 4970-79 (Claim 9)**

Plaintiff alleges that Wells Fargo and Financial Group sell loans with hidden fees and that they "approved an unaffordable loan to Plaintiff without regard to [his] creditworthiness, financial loss or ability to repay this loan". Complaint ¶¶ 68-69.[3] Plaintiff alleges that Financial Group prepared his loan paperwork and that "Defendants" fraudulently reported his income. Complaint ¶¶ 13, 53. However, Plaintiff does not allege that Wells Fargo had any role in preparing the allegedly fraudulent loan application or that the application was false. Plaintiff himself alleges that Wells Fargo approved his loan based on his loan application, which at least made it appear that he had the ability to repay the loan. Plaintiff's allegation with respect to hidden fees is entirely conclusory and need not be accepted. *See Sprewell,* 266 F.3d at 988.

**6. Cal. Civ. Code §§ 1920-21 (Claim 10)**

---

[3] This claim is not asserted against First American.

Plaintiff alleges that Wells Fargo and Financial Group violated Cal. Civ. Code §§ 1920-21 by misrepresenting the terms of the loan. He claims that Wells Fargo and Financial Group represented that the interest rate was fixed at 6.875% for the life of the loan. Complaint ¶ 74. However, the rate actually was fixed only for the first sixty months, after which the payments increased "dramatically". *Id.* Because this claim sounds in fraud, it must meet the particularity requirements of Rule 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04. A plaintiff must include a description of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. While Plaintiff identifies the parties to the misrepresentation generally, he does not allege the time, place, and specific content of any misrepresentation.

**7. Cal. Civ. Code § 1916.7 (Claim 11)**

Plaintiff alleges that Wells Fargo failed to fully inform him "of the terms, pros, cons, and risks of their adjustable rate mortgage and other loan options that might have been more beneficial to [him] as a borrower." Complaint ¶ 79. Cal. Civ. Code § 1916.7 places certain restrictions on adjustable rate mortgages and requires that the lender make certain disclosures at the time the borrower requests an application. Wells Fargo argues that Section 1916.7, at least insofar as it applies to a national bank, is preempted by the National Bank Act, 12 U.S.C. § 21 *et seq*.

12 C.F.R. § 34.4(a) provides that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks". Specifically, the National Bank Act allows a national bank to "make, arrange, purchase, or sell loans or extensions of credit, or interests therein, that are secured by liens on, or interests in, real estate (real estate loans)", 12 C.F.R. § 34.3, "without regard to state law limitations concerning . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents." 12 C.F.R. § 34.4(a)(9). Accordingly, the disclosure requirements of Cal. Civ. Code § 1916.7 do not apply to Wells Fargo.

**8. Cal. Civ. Code § 1632 (Claim 12)**

Plaintiff alleges that certain Defendants violated Cal. Civil Code § 1632 by failing to provide him with the loan documents in his primary language – Spanish. Complaint ¶¶ 82, 83. Cal. Civ. Code § 1632 provides that "[a]ny person engaged in . . . business who negotiates primarily in Spanish . . . , orally or in writing, in the course of entering into [certain loans], shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated . . . ." However, Plaintiff does not allege that the loan was negotiated in Spanish. Moreover, Section 1632 does not apply to a loan secured by real property unless certain exceptions apply. *See* Cal. Civ. Code § 1632(b)(2) and (4). Plaintiff has not alleged that his loan would qualify under any of these exceptions.

**9. Negligence per se (Claim 1)**

"[California] Evidence Code section 669 . . . codifies the common law doctrine of negligence per se, pursuant to which statutes and regulations may be used to establish duties and standards of care in negligence actions." *Elsner v. Uveges*, 34 Cal. 4th 915, 927 (2004). Cal. Evid. Code § 669(a) provides that "[t]he failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

Plaintiff alleges that Defendants have "a duty to comply with the foreclosure avoidance and workout plan requirements of [Cal.] Civil Code Section 2923.5." Complaint ¶ 28. "The procedure for foreclosing on security by a trustee's sale pursuant to a deed of trust is set forth in Civil Code section 2924 et seq. The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid." *Miller v. Cote*, 127 Cal. App. 3d 888, 894 (Cal. Ct. App. 1982). Cal. Civ. Code § 2923.5(a)(1) precludes an entity from recording a notice of default until 30 days after the mortgagee, trustee, beneficiary, or

authorized agent satisfies one of two requirements.

The creditor must either "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" as required under Section 2923.5(a)(2) or satisfy the due diligence requirements provided under Section 2923.5(g). Due diligence under Section 2923.5(g) requires a number of steps, including mailing a first class letter to the borrower that provides a toll-free number to find a HUD-certified housing counseling agency, attempting to contact the borrower by telephone at least three separate occasions at three different times of day, and mailing a certified letter to the borrower. Cal. Civ. Code § 2923.5(g)(1) and (2). Plaintiff alleges that he did not receive any mail, telephone calls, or other correspondence from the Defendants before February 12, 2009, when the notice of default was recorded. Complaint ¶ 21, Declaration of Angel Acosta, ¶ 7.

**a. Trustee liability**

First American is the successor trustee under the deed of trust. *See* Complaint ¶ 3 (identifying First American as the foreclosing trustee) and First American's RJN in Support of Motion to Dismiss, Ex. C.[4] First American has authority to foreclose on the property. *See* Cal. Civ. Code § 2924b(b)(4) (providing that "any person designated in an executed substitution of trustee" may record a notice of default). Cal. Civ. Code § 2923.5(a)(2) only requires the "mortgagee, beneficiary, or authorized agent" to contact the borrower. While Cal. Civ. Code § 2923.5(a)(1) prevents a trustee from recording a notice of default until that contact has been made, the only responsibility imposed on a recording trustee is to include a declaration of compliance with the law executed by the mortgagee, beneficiary, or authorized agent. Such a declaration was included with the notice of default in the instant case. Wells Fargo's RJN in Support of Motion to Dismiss, Ex. B. Even if the declaration is false, First American cannot be liable.

---

[4] This document, the substitution of a trustee under a deed of trust, is a judicially noticeable document because it is a matter of public record. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

**b. Federal preemption**

Wells Fargo also contends that Section 2923.5 is preempted by the National Bank Act. "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [National Bank Act]." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). Nonetheless, as discussed above, 12 C.F.R. § 34.4(a) provides that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks". "Specifically, a national bank may make real estate loans . . . without regard to state law limitations concerning . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages". 12 C.F.R. § 34.4(a)(10).

The Court is unaware of other decisions addressing this precise issue. However, several district courts within the Ninth Circuit have determined that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1464 – which contains the nearly identical language at 12 U.S.C. § 1464(b)(10)[5] – preempts Section 2923.5. *See Parcray v. Shea Mortg., Inc.*, No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010) (concluding that HOLA preempts Section 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage"); *Odinma v. Aurora Loan Servs.*, No. C-09-4674 EDL, 2010 WL 1199886, at *8 (N.D. Cal. Mar. 23, 2010) (concluding that a "Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA"); *Murillo v. Aurora Loan Servs., LLC,* NO. C 09-00504 JW, 2009 WL 2160579, at *4 (N.D. Cal. July 17, 2009) (same). "The extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, a fact that warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities." 69 Fed. Feg. 1904, at 1912 n.62. Accordingly, this Court concludes that Section 2923.5 also is preempted by the National Bank

---

[5] "[T]he types of state laws preempted by . . . this section include, without limitation, state laws purporting to impose requirements regarding . . . [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 U.S.C. § 1464(b)(10).

Act.

**10. Breach of fiduciary duties**

Plaintiff alleges that Defendants have breached fiduciary duties owed to him. However, with respect to First American, "[t]he trustee of a deed of trust is not a true trustee, and owes no fiduciary obligations; he merely acts as a common agent for the trustor and the beneficiary of the deed of trust." *Vournas v. Fidelity Nat. Tit. Ins. Co.*, 73 Cal. App. 4th 668, 677 (Cal. App. 4th Dist. 1999). With respect to Wells Fargo, there is no fiduciary relationship between a bank and its loan customer. *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (Cal. App. 1st Dist. 1989) (noting that the principle – that there is no fiduciary relationship between a bank and a depositor – applies with "even greater clarity" to the relationship between a bank and its loan customers).

**11. The UCL (also Claim 9)**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Civ. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Plaintiff alleges that Defendants' conduct – specifically their failure to comply with Cal. Civ. Code § 2923.5 – was unlawful. However, with respect to First American, Plaintiff has not stated a plausible claim that the trustee has violated the law. With respect to Wells Fargo, as discussed above, Section 2923.5 is preempted by the National Bank Act and Wells Fargo's conduct is not regulated by that statute.

**12. Civil conspiracy (Claim 7)**

Plaintiff alleges that Defendants engaged in a civil conspiracy to defraud him. Plaintiff's conclusory allegation that "Defendants were acting in concert and ratified and approved the above-described fraudulent conduct by the other Defendants" need not be accepted as true. *See Sprewell,* 266 F.3d at 988.

**13. Declaratory relief (also Claim 10)**

Finally, Plaintiff seeks a judicial declaration of the rights and obligations of the parties

pursuant to the loan agreement. Because Plaintiff has failed to allege a viable substantive claim, he has failed to demonstrate that he is entitled to injunctive or declaratory relief at this time.

## IV. CONCLUSION

Because Plaintiff has failed to establish a likelihood of success on the merits, the Court need not reach the remaining factors relative to Plaintiff's motion for a preliminary injunction. Accordingly, the TRO will be vacated, and Plaintiff's motion for a preliminary injunction will be denied. The motions to dismiss will be granted. Because Plaintiff did not file opposition to the motions to dismiss or provide a credible explanation for his failure to do so, leave to amend the claims with respect to the Moving Defendants will be denied.

**IT IS SO ORDERED**

DATED: 5/20/2010

JEREMY FOGEL
United States District Judge